**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**CHESAPEAKE SQUARE HOTEL, LLC,**

**Plaintiff,**

**v.** **Civil No. 2:13cv279**

**LOGAN'S ROADHOUSE, INC.,**

**Defendant.**

**OPINION AND ORDER**

This matter is before the Court on a motion for summary judgment filed by defendant Logan's Roadhouse, Inc. ("Defendant"), and a partial cross-motion for summary judgment filed by plaintiff Chesapeake Square Hotel, LLC ("Plaintiff").[1] After examining the briefs and record, the Court finds that oral argument is unnecessary because the facts and legal contentions are adequately presented, and oral argument would not aid in the decisional process. Fed. R. Civ. P. 78(b); E.D. Va. Loc. R. 7(J). For the reasons set forth below, both motions seeking summary judgment are **DENIED.**

**I.**

On October 28, 2011, Plaintiff and Defendant entered into a written contract (the "Contract") for the purchase and sale of a commercial real estate parcel in the City of Chesapeake,

[1] Also pending before the Court are two motions in limine filed by Defendant. Such motions will be resolved by separate Order.

Virginia ("the City"). Defendant entered into such Contract with the intention to build a restaurant on the parcel. On December 12, 2012, Defendant sent Plaintiff a formal notice of termination, claiming that Plaintiff failed to satisfy its contractual obligations that were necessary in order for Defendant to obtain permits from the City.

On May 16, 2013, Plaintiff filed its complaint in this Court alleging that Defendant lacked a valid justification for terminating the Contract and was therefore in breach of the Contract. On June 14, 2013, Defendant filed an answer and counterclaim contending that Defendant properly terminated the Contract and that it was Plaintiff, not Defendant, that was in breach. On February 3, 2014, both parties filed the summary judgment motions currently before the Court, and such motions are now fully briefed and ripe for review. A bench trial is currently scheduled for March 18, 2014.

**II.**

The Federal Rules of Civil Procedure provide that a district court shall grant summary judgment in favor of a movant if such party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the

requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 247-48 (1986).

If a movant has properly advanced evidence supporting entry of summary judgment, the non-moving party may not rest upon the mere allegations of the pleadings, but instead must set forth specific facts in the form of exhibits, sworn statements, or other materials that illustrate a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Fed. R. Civ. P. 56(c). At that point, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. In doing so, the judge must construe the facts and all "justifiable inferences" in the light most favorable to the non-moving party, and the judge may not make credibility determinations. Id. at 255; T-Mobile Northeast LLC v. City Council of City of Newport News, Va., 674 F.3d 380, 385 (4th Cir. 2012).

When confronted with cross-motions for summary judgment, "the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks and citation omitted). As to each motion, the Court must resolve factual disputes and competing rational inferences in favor of the non-movant. Id.

III.

Although the parties frame the instant contractual dispute as a legal question appropriate for resolution on summary judgment, they each dispute many of the opposing party's statements of "undisputed fact." Moreover, when counter-facts are presented in an opposition brief, many of such facts are challenged in the reply brief. Although the broader facts in this case are undisputed, the parties clearly dispute the details that bear on the ultimate question in this case: whether Defendant was "unable" to obtain permits from the City despite using what it claims were "commercially reasonable efforts."

Although the Court has before it deposition excerpts, letters and emails, and other exhibits, the current record renders summary judgment inappropriate as to either of the pending motions because each party has presented some evidence and argument suggesting that it might ultimately prevail in this matter. See Rossignol, 316 F.3d at 523 (indicating that when separately considering an individual summary judgment motion, all rational inferences must be resolved in favor of the non-movant). Even though many of the broader facts are undisputed, small details that are critical to answering the ultimate question remain contested. For example, Defendant contends that it used commercially reasonable efforts to obtain City approval of its "site plan," which was necessary to secure a building

permit, but that such approval was obstructed by Plaintiff's longstanding failure to post construction bonds. ECF Nos. 30-7, 37-3. Defendant contends that its inability to obtain the approvals necessary to secure a building permit are demonstrated by the fact that Defendant's <u>second</u> attempt to obtain such approval was rejected by the City, in part, based on <u>Plaintiff's continuing failure</u> to post bonds. ECF No. 30-1.

In contrast, Plaintiff both directly challenges the commercial reasonableness of Defendant's conduct, and contends that Plaintiff was diligently performing all of its contractual duties as of Defendant 12, 2012. ECF No. 32-8. Plaintiff characterizes the record as demonstrating that, at the time Defendant canceled the Contract, all obstacles to Defendant obtaining a building permit could have been eliminated within one week, which was within the contractually defined "Permit Period." Moreover, Plaintiff seeks to introduce expert testimony to demonstrate that commercial projects typically involve three rounds of applications before a site plan is approved and a building permit is issued. ECF No. 32-10.

Notwithstanding the fact that Plaintiff's failure to post bonds appears from the record to have been a roadblock to Defendant obtaining a building permit, the record does not explain why Plaintiff, over a period of many months, failed to post such bonds, something Plaintiff's own expert seeks to opine

could have been "easily achieved" in a very short time frame. ECF No. 32-10. On the other hand, the record also does not explain why Defendant allowed the contractual "Inspection Period" to expire without cancelling the Contract if Defendant believed that Plaintiff failed to satisfy any of the conditions precedent discussed in paragraph 11(a) of the Contract, as the Contract affords Defendant wider latitude regarding termination during the Inspection Period. Plaintiff argues that the fact that Defendant's termination letter discusses a matter apparently unrelated to the issuance of a building permit suggests that Defendant may have been motivated to cancel the Contract because it was uncomfortable with the deal in general, as contrasted with being "unable" to obtain site plan approval and a building permit. ECF No. 1-6. In the end, a more complete understanding of the parties' communications and business relationship, particularly details associated with the bonds, or lack thereof, appears vital to determining whether Defendant prematurely canceled the Contract, or whether, after affording Plaintiff numerous opportunities to remove the impediment to obtaining a building permit, Defendant properly exercised its contractual option to terminate <u>during the Permit Period</u> based on its "inability" to obtain the necessary permits.

Accordingly, neither party's motion demonstrates "that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Both motions are therefore **DENIED**.

**IV.**

Included in the Court's denial of Defendant's summary judgment motion is the denial of Defendant's efforts to limit its potential damages to the deposit paid under the Contract. The Contract provides that Virginia law governs its interpretation, and Virginia law is clear on this point—an express contractual remedy, such as a liquidated damages clause, "will be exclusive of other possible remedies only where the language employed in the contract clearly shows an intent that the remedy be exclusive." Bender-Miller Co. v. Thomwood Farms, Inc., 211 Va. 585, 588 (1971) (emphasis added). The Fourth Circuit has interpreted the Virginia rule as a presumption against exclusivity, explaining as follows:

> In Bender-Miller, the Supreme Court of Virginia placed the presumption against exclusivity. Thus, a listed remedy is exclusive of other possible unlisted remedies "only where the language employed in the contract clearly shows an intent that the [listed] remedy be exclusive." 211 Va. at 588 (emphasis supplied). This reading of Bender-Miller comports with cases from this court and other courts that have applied Bender-Miller. Admittedly, none of the above-cited cases address the precise either/or contract language found in this case. However, the question is whether the contract clearly makes the listed remedies exclusive. Notably, the contract does not state that Ndeh shall have "only" the listed remedies or that he is "limited to" the listed remedies. In sum, the contract does not include any clear language of exclusivity.

Ndeh v. Midtown Alexandria, L.L.C., 300 F. App'x 203, 207 (4th Cir. 2008) (internal citations omitted); see Atlas Mach. & Iron Works, Inc. v. Bethlehem Steel Corp., 986 F.2d 709, 713 (4th Cir. 1993) (discussing Bender-Miller and concluding that the non-breaching party was "free to pursue any legal remedy" and was not restricted to pursuing foreclosure based on the contractual language stating that, in the event of non-payment, the creditor "shall have the right" to foreclose on the collateral); Safeway Inc. v. CESC Plaza Ltd. Partnership, 261 F. Supp. 2d 439, 444 n.1 (E.D. Va. 2003) (discussing the Court's earlier finding that an express contractual remedy was not exclusive under Virginia law because it was phrased permissibly, stating: the "lessee may cancel this lease" if certain conditions are met); cf. Christopher Associates, L.P. v. Sessoms, 245 Va. 18, 21 (1993) (interpreting as exclusive a liquidated damages clause that included language stating that, in the event of breach, retention of the deposit paid by the prospective real estate purchaser was the seller's "sole and exclusive remedy against Buyer") (emphasis added).

Here, as in Bender-Miller, Ndeh, and Safeway, the Contract does not include any "clear" language of exclusivity. To the contrary, similar to the remedy clause at issue in Safeway, the instant Contract uses permissive language, stating: "If

Purchaser is the party in default, Seller may terminate this Contract and retain the deposit as liquidated damages (true damages being difficult and impossible to ascertain), in which event neither party shall have any further rights or duties under this Contract, except as otherwise expressly provided herein." Contract ¶ 16(a), ECF No. 1-1 (emphasis added).[2] Accordingly, the Court finds as a matter of law that Plaintiff's potential damages are not limited by the permissive liquidated damages clause contained in the Contract.

Also included in the Court's denial of Defendant's summary judgment motion is the rejection of Defendant's contention that Plaintiff was necessarily in breach of the Contract in July of 2012 based on its failure to obtain "unconditional approval" to create, subdivide, and develop the larger commercial development. Defendant argues that the Contract "presumed" such unconditional approvals had been granted by the City before the beginning of the contractual "Inspection Period." However, Defendant fails to direct the Court to any contractual provision that "presumes" such fact. Moreover, the parties agree that the contractually defined "Inspection Period" began in July of 2012 when the City granted conditional approval of Defendant's "Subdivision Plan." Accordingly, Defendant fails at this time

---

[2] Moreover, here, it was Defendant (Buyer) who terminated the Contract, not Plaintiff (Seller).

to demonstrate that Plaintiff was "in breach" in July of 2012 as a result of its failure to obtain unconditional approvals from the City prior to the inception of the Inspection Period.[3]

Included in the Court's denial of Plaintiff's partial summary judgment motion is the denial of Plaintiff's contention that Defendant was necessarily required to wait until the end of the contractually defined "Permit Period" to terminate the Contract under the terms set forth in ¶ 11(c). Notably, the plain language of the Contract provides that Defendant had the right to cancel "during said Permit Period" if Plaintiff was in default or if Defendant "is unable to obtain the required approvals and permits from City of Chesapeake despite [Defendant's] commercially reasonable efforts." Contract ¶ 11(c) (emphasis added). Accordingly, the Contract does not in all circumstances preclude termination prior to the end of the Permit Period.

Also included in the Court's denial of Plaintiff's partial summary judgment motion is the denial of Plaintiff's contention that the applicable legal standard is whether it was "impossible" for Defendant to obtain permits during the "Permit Period." Defendant did not purport to terminate the Contract

---

[3] Separately, the Court notes that Defendant's citation to Massie v. Firmstone, 134 Va. 450, 462 (1922) appears misplaced as such state rule of evidence is "inapplicable to the determination of a motion for summary judgment in federal district court." Utility Control Corp. v. Prince William Const. Co., 558 F.2d 716, 719 (4th Cir. 1977).

due to "impossibility of performance," Defendant purported to terminate based on its claimed inability to obtain the necessary permits, as expressly contemplated by ¶ 11(c) of the Contract. It is undisputed that Defendant submitted its site plan to the City twice, such submissions occurring approximately two months apart, and notwithstanding such intervening time period, the site plan was not approved the second time, in part, because Plaintiff still had not obtained the necessary bonds. The operative legal question is not impossibility, but rather, whether Plaintiff's apparent inaction, when considered in conjunction with all of the evidence in this case, rendered Defendant "unable" to obtain permits despite the exercise of "commercially reasonable efforts."

**V.**

Because critical facts that bear on Defendant's justification for terminating the Contract remain in dispute, Defendant's motion for summary judgment (ECF No. 29) and Plaintiff's motion for partial summary judgment (ECF No. 27) are each **DENIED**.

Having denied summary judgment, but also having made rulings that clarify some of the legal disputes in this case, the Court **INSTRUCTS** counsel for the parties to either meet, in person, and confer as to the possibility of settlement, or alternatively, to agree to contact the Magistrate Judge who

previously performed a settlement conference in this case to schedule a resumption of formal settlement negotiations. Unless the parties settle the case, the bench trial will begin on Tuesday March 18, 2014.

The Clerk is **DIRECTED** to send a copy of this Memorandum Order to all counsel of record.

**IT IS SO ORDERED.**

/s/ MSD
Mark S. Davis
United States District Judge

Norfolk, Virginia
March 12, 2014